Dear Chief Brown:
You advise this office that you are the newly elected Chief of Police for the City of Port Allen. You ask whether or not you have the authority to appoint a current police department employee to the position of Assistant Chief of Police.
The City of Port Allen is a Lawrason Act municipality, governed by the provisions of R.S. 33:321, et seq. The duties of an elected chief of police are set forth in R.S. 33:423, providing:
 § 423. Duties of marshal
 A. The marshal shall be the chief of police and shall be ex officio a constable. He shall have general responsibility for law enforcement in the municipality, and shall be charged with the enforcement of all ordinances within the municipality and all applicable state laws. He shall perform all other duties required of him by ordinance. In those municipalities governed by the provisions of this Part, R.S. 33:321 et seq., which have a chief of police elected by the qualified voters thereof, he shall make recommendations to the mayor and board of aldermen for appointment of police personnel, for the promotions of officers, to effect, disciplinary action, and for dismissal of police personnel. Such nominations or recommendations are to be made regardless of race, color, disability, as defined in R.S. 51:2232(11), or creed.
 B. The provisions of Subsection A of this Section shall not be construed to limit or restrict the provisions of R.S. 33:423.3. (Emphasis added).
Of further import is R.S. 33:362(A)(3) which pertinently provides:
 (3) Subject to law, including R.S. 33:423.3, and applicable civil service rules and regulations, the board of aldermen shall, by ordinance, provide policies and procedures regulating the employment of municipal employees including the hiring and firing of such employees.
On many occasions this office has addressed the issue here under consideration. It remains the opinion of this office that a chief of police can only make recommendations to the mayor and board of aldermen for the hiring or appointment of police department personnel. The chief of police does not have the unilateral authority to hire and fire police personnel, based on the legal authority cited below.
In Thibodeaux vs. Hernandez, 702 So.2d 1157 (La.App. 3rd Cir. 1997), the court recognized that "except in a few isolated instances, the Lawrason Act does not explicitly grant elected Chiefs of Police the authority to hire or fire personnel." 702 So.2d at page 1158. Similarly, in Manual vs. Town of Mamou, 704 So.2d 358 (La.App. 3rd Cir. 1997), the court stated that "the elected chief of police may not appoint his own personnel", but rather must proceed according to the dictates of R.S. 33:423(A) cited above. 704 So.2d at page 360. In accord with these decisions are Attorney General Opinions 00-366, 98-460, and 88-532.
Specifically, with respect to an assistant chief of police, this office has determined that a newly elected chief of police may not replace an assistant chief of police with someone of his own choosing, as that power is reserved to the mayor and board of aldermen. See Attorney General Opinion 77-1501. Further, in Attorney General Opinion 88-532, this office concluded:
 Accordingly, the Board of Aldermen for the Town of Baldwin may, by ordinance, create the position of Assistant Chief of Police and it may entertain the recommendation of the chief of police for personnel to fill that position. Since the police chief has no authority to hire and fire police personnel, it is the Board of Aldermen who ultimately must appoint the assistant to the chief of police. Further, the Board of Aldermen is not bound to accept the recommendation of the Chief of Police for the Assistant Chief's position. (Emphasis added).
See also attached Attorney General Opinion 78-1290, stating that the hiring of an assistant chief of police and the retention of the former chief of police on the payroll by the newly elected chief of police were ultra vires acts, considered null and void, because both were done without the approval of the mayor and board of aldermen.
While the mayor and the board of aldermen have final hiring authority, they may only hire as police personnel, including an assistant chief of police, those persons who have been recommended by the chief of police. In Lee vs. Grimmer, (La.App. 1st Cir. 2000) WL 1871713, the court noted "the legislature's use of the word `shall' in LSA R.S. 33:423 either makes the chief of police's recommendation a pre-requisite to action by the mayor and board of aldermen or it does not; we believe that it does make a recommendation a pre-requisite." In accord with this decision are Attorney General Opinions 98-241, 98-460, and 82-613, copies attached.
In response to your specific questions contained in your correspondence, note first that the former chief of police had no authority to either create or abolish the position of assistant chief of police, and his attempt to do so had no effect. Thus, the mayor and board of aldermen may review and approve your recommendation for assistant chief of police as they are empowered by statute to hire police department personnel. We do not think it necessary for the board to adopt an ordinance specifically creating the position unless all positions allotted the police department by previous ordinance are already filled. Of course, any appointment or employment by the mayor and board of aldermen is subject to budgetary limitations.
Reviewing the legislative history of R.S. 33:423, the court in Leevs. Grimmer, supra, noted:
 By these various amendments, it is obvious to this court that the legislature intended to further limit the power that the mayor and board of aldermen had with respect to the hiring and firing of employees of the police department. Accordingly, we view the legislature's use of the word "shall" in LSA R.S. 33:423
as mandating a recommendation by the chief of police as a pre-requisite to action by the mayor and board of aldermen with respect to the termination of police personnel.
 While we recognize that, as argued by the mayor and Board, the requirement of the chief of police's involvement in such actions may lead to difficulty in some situations where the administration and the chief of police are at odds concerning such matters, one cannot ignore the clear language of the statute. Any change in the statutory requirement is for the legislature to address, not the courts. (Emphasis added).
As we have already noted, although the mayor and board of aldermen are not bound to accept your first recommendation, neither may they proceed to hire outside your recommendation. Hopefully, you and the mayor and board of aldermen can work together to avoid a scenario where each recommendation made by you is rejected.
In other municipalities similar to the City of Port Allen, the result to the questions raised herein would be quite different, as the power to hire has been legislatively allocated to the Chief of Police. See R.S.33:423.2 (City of Harahan); R.S. 33:423.3 (City of Gretna); R.S. 33:423.4
(City of Ville Platte); R.S. 33:423.5 (City of Scott); R.S. 33:423.6
(City of Westwego); R.S. 33:423.7 (City of Patterson); R.S. 33:423.8
(City of Gonzales); R.S. 33:423.9 (City of Crowley); and R.S. 33:423.10
(Village of Tickfaw). However, no such exemption currently exists for the City of Port Allen.
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: ________________________________ KERRY L. KILPATRICK ASSISTANT ATTORNEY GENERAL
KLK:ams
OPINION NUMBER 00-366
October 24, 2000
77 OFFICERS — LOCAL MUNICIPAL La. R.S. 33:423
La. R.S. 33:404.1
Chief of Police of Carencro cannot promote and increase salaries of his employees without the approval of the council.
Mr. Timmy Duhon Chief of Police Carencro City Police Post Office Drawer 10 Carencro, Louisiana 70520
Dear Chief Duhon:
We received your request for an opinion regarding the promotion of employees within your department. After reviewing your request and discussing the matter with you, it is our understanding that you specifically question your authority to promote and increase the salaries of your employees without the approval of the council. We understand from you that the funds for the proposed salary increases are within your current budget.
Carencro is a Lawrason Act municipality with an elected Chief of Police. Pursuant to La. R.S. 33:423, the Police Chief has the general responsibility of law enforcement in the given municipality. This statute also provides that the Police Chief is to make recommendations to the Mayor and Board of Aldermen for the appointment of police personnel, for the promotion of officers, for disciplinary action, and for the dismissal of police personnel. The Louisiana Supreme Court has in fact recognized that the Chief of Police of a Lawrason Act municipality is the chief law enforcement officer of the municipality and, as such, has the inherent power of supervision over the police department. Lentini v.City of Kenner, 211 So.2d 311 (La. 1968). Our office has recognized this principle in numerous opinions. See Attorney General Opinions 00-96, 00-113, 99-406, and 99-27. As noted in these prior opinions, the actual appointment and dismissal power of police personnel in a Lawrason Act municipality is vested in the Mayor and Board of Aldermen. However, this power is contingent upon the recommendation of the Chief of Police. All employees of the police department are included in the term "police personnel". See Attorney General Opinion 99-48.
Thus, as set forth in the statute and opinions noted above, the Chief of Police in a Lawrason Act municipality must make a recommendation to the Mayor and Board of Aldermen for the promotion of police personnel. The mayor and Board of Alderman have the power to promote police personnel, subject, of course, to your recommendation. Therefore, neither the Board of Aldermen nor the Chief of Police may act unilaterally to promote police personnel.
With regard to increasing the salaries of your employees, please note that because the Mayor and Board of Aldermen are empowered to hire all municipal employees, including police personnel, they have the authority to compensate police personnel contingent, of course, on your recommendation. See Attorney General Opinion 00-113. As such, it is our opinion that you may not unilaterally increase the salaries of your employees. You may recommend the salary increases to the Mayor and Board of Alderman who, by ordinance, actually effectuate the salary increases.
You also questioned if you could increase your salary with existing funds in your budget for salaries without the approval of the council. La. R.S. 33:404.1 provides that your compensation, as a municipal officer, is fixed by the Board of Alderman by ordinance. Thus, it is our opinion that only the Board of Aldermen has the authority to increase your salary by ordinance. You cannot do so on your own.
We trust that this adequately responds to your request. If you have any questions or comments, please do not hesitate to contact our office.
Yours very truly,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: __________________________ TINA VICARI GRANT Assistant Attorney General
RPI:TVG:crt
OPINION NUMBER 98-460
January 6, 1999
60 Law Officers 71 Municipalities
Addresses general questions of authority concerning an elected chief of police and his municipal governing authority, where all are covered by the provisions of the Lawrason Act.
Honorable Vern A. Breland Chief of Police P.O. Box 1204 Sterlington, LA 71280
Dear Chief Breland:
You are the elected chief of police of the Town of Sterlington, which is governed by the provisions of the Lawrason Act, LSA-R.S. 33:321, etseq. You have presented several questions to us for resolution concerning the powers and duties statutorily granted to one holding your official position. We respond to your questions in chronological order.
Question One
 Under the Lawrason Act, R.S. 33:321, et seq., does the Board of Alderman have the authority to tell an elected chief of police who he can hire or fire?
Our response to your first question requires application of LSA-R.S.33:423 defining the duties of an elected chief of police, which pertinently provides:
 ". . . . In those municipalities governed by the provisions of (the Lawrason Act) which have a chief of police elected by the qualified voters thereof, he shall make recommendations to the mayor and board of aldermen for appointment of police personnel, for the promotion of officers, to effect disciplinary action, and for dismissal of police personnel. . . ."
There is now jurisprudence interpreting the foregoing statute which specifically answers your first question. In the case of Thibodeaux vs.Hernandez, 702 So.2d 1157 (La.App. 3rd Cir. 1997), the court resolved the power struggle between the board of aldermen and an elected chief of police concerning hiring and firing of police employees as follows:
 ". . . . we conclude that the Aldermen and Mayor lacked the authority to unilaterally terminate (a police officer) over the objection of the elected chief of police. . . ." See Thibodeaux, supra, at page 1159.
The court further cited with approval the following language from an opinion issued by this office:
 "The ultimate decision concerning any layoffs of police personnel due to budgetary constraints rests with the board of aldermen. However, the discipline or dismissal of a police employee by the board of aldermen Is contingent upon the recommendation made by the chief of police." (Emphasis added); see Thibodeaux, supra, at page 1159 and Attorney General Opinion 93-405.
Additional language from Thibodeaux, at page 1159, directs that "R.S.33:423 vests and common sense dictates in elected chiefs of police a stake in the hiring and firing of police officers." We adopt the determination of the court, as we are required to do, and answer your first question as follows: your recommendation is required in order for the board of aldermen to hire or fire police personnel. Otherwise, the board of aldermen could "make such critical personnel decisions without the chief of police's input or concurrence" in contradiction to the directives of the court in Thibodeaux. Thibodeaux, at page 1159.
Question Two
 If the Board of Alderman has not enacted an ordinance that provides for Policies and Procedures regulating the employment of municipal employees, including the hiring and firing, who has the authority to do such hiring or firing, the Board of Alderman or the elected chief of police?
LSA-R.S. 33:362(A)(1) and (3) empowers the board of aldermen to provide by ordinance policies and procedures "regulating the employment of municipal employees including the hiring and firing of such employees" but as the court noted in Thibodeaux, the statute "fails to mention police officers". See Thibodeaux, at page 1159. Nonetheless, we infer from R.S. 33:423 that the board of aldermen retain appointment and dismissal authority over police personnel despite the fact that no formal procedures manual may have been adopted. The court has instructed that an elected chief of police's "input or concurrence" is mandatory concerning such "critical personnel decisions". See Thibodeaux, at pages 1158 and 1159. Again, as in the instance of dismissal of police personnel, the hiring of police personnel is contingent upon your recommendation as chief of police.
Question Three
 Do the employees of the police department of an elected chief of police fall under the authority of the elected chief of police or the mayor and board of alderman under Lawrason Act R.S. 33:404? I need clarification as to whether an elected chief is responsible for all aspects of his department from the hiring and firing to the daily running of his department and what role the board of alderman play in this aspect.
This office has rendered numerous opinions holding that an elected chief of police has control over the administration of his department in a Lawrason Act municipality. The chief of police is the final authority in the day-to-day operation of his office and equipment. The governing authority cannot revoke or impair the inherent powers of an elected chief of police, which powers have been defined "as the power to supervise the operation of the police department and assign its personnel and control its equipment." See Opinions 98-204, 97-393, 95-135. Again, note that the board of aldermen hire and fire police personnel, subject to your mandatory recommendation.
Question Four
 Does the Board of Alderman set the qualifications for the police department employees or does the elected chief of police?
While the chief of police may adopt a policy and procedure manual with respect to qualifications of potential police employees, the Board of Alderman is not bound by these criteria. Again, the ultimate authority to hire and fire rests with the Board and the chief of police cannot, by way of internal policy, disrupt or impair that authority. See Attorney General Opinion 98-204.
Question Five
 Can an outgoing chief of police and Board of Alderman enter into a contract for training services which will continue into another chief of police's term and affecting his budget? If so, can the contract be legally broken by the newly elected chief once his term begins?
We refrain from directly responding to this question regarding the legality of a contract with which we are unfamiliar. However, please refer to Attorney General Opinion 98-438, attached, in which we concluded that a contract involving the expenditure of municipal funds requires the approval of both the mayor and the board of aldermen. This factor would, in our opinion, be determinative of whether the new administration must continue to abide by the contract, absent any other illegality.
Question Six
 Does the Lawrason Act pertain the same to an elected chief of police as to an appointed chief of police?
Yes, the provisions of the Lawrason Act are equally applicable to either an appointed or an elected chief of police. An appointed chief of police enjoys the same powers as an elected chief. See Attorney General Opinion 83-11. A notable difference is that an elected chief of police may only be involuntarily removed from office through the recall election process. See Attorney General Opinion 83-523.
Question Seven
 Can the Board of Alderman set an elected chief of police's work hours or is this under the direct control of the elected chief of police?
The chief of police, as an elected official, is not required to establish specific working hours, but serves on a full-time basis. See Attorney General Opinion 97-431.
We hope the foregoing is helpful to you. Should you require further assistance, please contact this office.
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: ____________________________ KERRY L. KILPATRICK ASSISTANT ATTORNEY GENERAL
*1 OPINION NUMBER 88-532
February 14, 1989
71 Municipalities 77 Officers La. R.S. 33:381; 33:423; 33:362
Board of Aldermen of a Lawrason Act municipality may, by ordinance, create the position of Assistant Chief of Police. The Chief of Police has no authority to hire police department personnel.
Thomas C. Senette, Esquire Assistant District Attorney Courthouse Building Franklin, LA 70538
Dear Mr. Senette:
You have requested an opinion from this office on behalf of the Town of Baldwin, a Lawrason Act municipality, for which you serve as City Attorney.
You have asked whether the Board of Aldermen, by ordinance, may require the Chief of Police to appoint an Assistant Chief of Police?
The Town of Baldwin is governed by a Mayor and Board of Aldermen. It is known as a Lawrason Act municipality. La. R.S. 33:321 et seq. Its Chief of Police is elected.
Revised statute 33:381 sets forth the required municipal officers for every Lawrason Act municipality. It states:
"A. The officers of every municipality shall be a mayor, aldermen, a chief of police, a tax collector, a clerk, and a street commissioner." We view this statute as one which establishes the essential officers that a municipality must provide. It does not limit the other non-essential municipal officers that a municipality may provide.
The legislative powers of a municipality are statutorily vested in and exercised by its board of aldermen. La. R.S. 33:362. The mayor serves as the chief executive officer of the municipality. id. One of powers vested in the Board of Aldermen is the ability to enact ordinances. La. R.S. 33:362
(2)b.
An elected chief of police is charged with law enforcement in the municipality, but can only make recommendations to the mayor and board of aldermen for the appointment of police personnel. La. R.S. 33:423. In other words, the chief of police does not have authority to: hire and fire police personnel.
Accordingly, the Board of Aldermen for the Town of Baldwin may, by ordinance, create the position of Assistant Chief of Police and it may entertain the recommendation of the chief of police for personnel to fill that position.
Since the police chief has no authority to hire and fire police personnel, it is the Board of Aldermen who ultimately must appoint the assistant to the chief of police. Further, the Board of Aldermen is not bound to accept the recommendation of the Chief of Police for the Assistant Chief's position.
You have also requested an opinion regarding the legality of the Chief of Police creating a position of juvenile officer and appointing his secretary to fill that position.
As stated in your request, the Chief of Police employed a secretary after approval by the Board of Aldermen. He then created the position of juvenile officer within the police department and hired his secretary as the juvenile officer.
The actions of the Chief of Police in appointing his secretary to the position of juvenile officer without the prior approval of the Board of Aldermen is in violation of La. R.S. 33:423.
*2 It is, therefore, our opinion that the position of juvenile officer must be vacated so that it may be properly appointed by the Board of Aldermen if they so desire. Accordingly, the secretary hired with the approval of the Board of Aldermen is still a secretary because that is the only position in the police department for which she has been lawfully appointed.
Very truly yours,
 William J. Guste, Jr. Attorney General
 By: Henry A. Barham, III Assistant Attorney General
OPINION NO. 77-1501
November 8, 1977
77 — Officers — Local municipal selection Qualifications tenure; vacancies R.S. 33:401 (31) R.S. 33:2218 R.S. 33:402 (4)
Newly elected Chief of Police of Lawrason Act municipality may not replace assistant police chief with some one of his own choosing. This power is reserved to the mayor and board of aldermen.
Mr. Terry J. Galland Chief of Police Village of Plaucheville Route 1, Box 5-B Plaucheville, Louisiana 71362
Dear Mr. Galland:
Your letter to the Secretary of State requesting an opinion relative to the powers of a Lawrason Act municipality police chief has been transferred to this office for reply.
As we understand your request, you have two questions.
 1.) Does the elected chief of police have the power to replace the assistant chief of police with someone of his own choosing?
 2.) Must the chief of police certify the warrant entitling municipal police employees to state supplemental pay?
R.S. 33:401 (31) states the mayor and board of aldermen shall have the power to provide for the removal of officers and discharge of employees for misconduct or neglect of duty, subject to any applicable civil service law. R.S. 33:402 (4) states the mayor and alderman shall also have the power:
 "to establish, regulate and support night watch and police and define the duties thereof, subject to any applicable civil service law. However, in those municipalities governed by the provisions of R.S. 33:321
through R.S. 33:481, which have a chief of police elected by a majority of the qualified voters thereof, appointments of police personnel shall be made only upon the recommendation of the chief of police. Such nominations or recommendations are to be made irregardless of race, color or creed."
Upon reviewing the above two provisions, this office is of the opinion the chief of police may not replace the assistant police chief. This power is retained by the mayor and board of aldermen under R.S. 33:401
(31). R.S. 33:402 (4) simply says the mayor and board of aldermen may nothire any police personnel except upon recommendation of the chief of police. R.S. 33:402 (4) does not give the chief of police the power to discharge anyone. However, the issue of discharging a police employee seems to be treated differently from the matter of suspension. I am enclosing a copy of Opinion No. 77-1428 of this office concerning this issue.
Secondly, you state you refused to certify a document entitling the assistant police chief to $200 per month state supplemental pay but that this document was mailed anyway without your certification.
In your request you state the assistant police chief has held this position for seven years. Under R.S. 33:2218.2 this man is entitled to $200 per month state supplemental pay. R.S. 33:2218.4 states this pay is disbursed upon warrants drawn by the mayor and forwarded to the Director of the State Department of Public Safety. The director then delivers the checks to the individuals.
The chief of police cannot interefere with the payment of this state supplemental compensation. The warrant for payment is drawn by the mayor, not the chief of police.
If we can be of further assistance, please contact us.
Sincerely,
 WILLIAM J. GUSTE, JR. ATTORNEY GENERAL
 BY: _______________________________ TOMMY D. TEAGUE STAFF ATTORNEY
TDT/dyj
Enclosure
OPINION NO. 78-1290
October 11, 1978
77-OFFICERS
A newly elected Chief of Police in a municipality covered by the Lawrason Act may not replace the Assistant Chief of Police without the approval of the Mayor and Board of Aldermen.
Op. Atty. Gen. No. 74-668.
Mr. Raymond L. Cannon Attorney and Counselor At Law 1100 West Craig Street P.O. Box 1108 Tallulah, Louisiana 71282
Dear Mr. Cannon:
This letter is in response to your request on behalf of the Mayor and Board of Aldermen of the City of Tallulah as to the authority of a newly elected Chief of Police to replace the Assistant Chief with someone of his own choosing while allowing the former Chief of Police to remain on the force.
In answering your request, I must refer to a previous opinion of this office, Op. Atty. Gen. No. 74-668, in which a similar question was addressed. That opinion dealt with an Assistant Chief of Police who was fired by the Chief of Police without the approval of the Mayor and Board of Aldermen. In pertinent part, that opinion states:
 "Construing together R.S. 33:401 A, Paragraph (31), and R.S. 33:404, it is our opinion that the discharge of a validly appointed employee of the municipality can be effected only by the mayor and board of aldermen convened and acting as the governing authority, and not by the Chief of Police."
In your letter to this office you state that the hiring of the current Assistant Chief of Police and the retention of the former Chief of Police in another capacity, were both done without the approval of the Mayor and Board of Aldermen. This being the case, both actions are ultra vires acts and, therefore, null and void.
In order to fully clarify the issue, I have attached a copy of Opinion No. 74-668 which fully explains the proper application of the law in this regard.
I trust that this adequately answers your inquiry. If there is needs for further clarification, do not hesitate to call on us.
Very truly yours,
 WILLIAM J. GUSTE, JR. ATTORNEY GENERAL
 BY: ______________________ HENRY P. JULIEN, JR. Assistant Attorney General
HPJ/cac
Encl.
OPINION NUMBER 82-613
June 28, 1982
71 Municipalities 77 Officers
LSA-R.S. 33:381, 33:381.1, 33:386, 33:401, 33:404, 33:423, Art. VI, § 12 of the La. Const. of 1974
Duties and powers of officers of a Lawrason Act Municipality.
Honorable Frank Muscarello Chief of Police Post Office Box F Tickfaw, Louisiana 70466
Dear Mr. Muscarello:
You recently requested an opinion from this office concerning the duties and powers of certain elected officials of a Lawrason Act municipality.
Your questions were:
 1. Can the Board of Aldermen employ a clerk or any town employee without consent of the Mayor?
 2. Can a Mayor dismiss a town employee for good reason?
 3. Can the Board of Aldermen employ auxiliary police without recommendation of the Chief of Police?
 4. Can the Board of Aldermen employ his brother to work for the City if his brother is dismissed for a period of twelve (12) days?
 5. Can the Board of Aldermen set hours for an elected Chief of Police?
 6. Can the Board of Aldermen cut an elected Chief of Police's salary?
 7. If the Chief of Police has two (2) cars, can the Board of Aldermen sell one of them?
 8. Can the Mayor and the Board of Aldermen make an elected Chief of Police log his mileage, etc.?
 9. Can the Chief appoint an assistant chief if not full-time?
Most of your inquiries dealt with the hiring and firing of non-elected municipal officials. More specifically, the thrust of the inquiries were centered around the delegation of the authority to hire and fire municipal officials and which municipal officials possess this delegated authority.
The Village of Tickfaw is a Lawrason Act municipality and is therefore governed by the applicable statutes. The pertinent statutes dealing with the authority to hire and fire municipal officials are LSA-R.S. 33:401,33:386 and 33:423. LSA-R.S. 33:401, provides, in pertinent part, that:
 A. The mayor and board of aldermen of every municipality shall have the care management, and control of the municipality and its property and finances. They shall have power:
 (30) To provide for municipal officers other than those required by this Part who may be found necessary; to prescribe, the duties and fix the compensation of all officers and employees, subject to any applicable civil service law; and to require bonds with sureties for the performance of duties from all officers and employees.
 (31) To provide for the removal of officers and discharge of employees for misconduct or neglect of duty, subject to any applicable civil service law.
LSA-R.S. 33:386 provides, in part, as follows:
 At the first regular meeting of the board of aldermen succeeding each regular municipal election, the mayor, subject to confirmation by the board of aldermen, shall appoint a clerk, tax collector, and all other necessary officers whose election is not provided for in R.S. 33:381. In the event of a vacancy, the mayor, subject to confirmation by the board of aldermen, shall appoint a successor to any such office. (Emphasis added.)
LSA-R.S. 33:423 provides:
 "The marshall shall be the chief of police and shall be ex officio a constable. He shall have general responsibility for law enforcement in the municipality, and shall be charged with the enforcement of all ordinances within the municipality and all applicable state laws. He shall perform all other duties required of him by ordinance. In those municipalities governed by the provisions of R.S. 33:321 through R.S. 33:481 which have a chief of police elected by the qualified voters thereof, he shall make recommendations to the mayor and board of aldermen for appointment of police personnel. Such nominations or recommendations are to be made irregardless of race, color, or creed." (Emphasis added)
In accordance with the statutes quoted above, it is the opinion of this office that the power to hire and fire municipal employees is vested in the mayor and board of aldermen. In the first regular meeting of the board of aldermen succeeding each regular municipal election, the mayor,subject to confirmation by the board of aldermen, shall appoint a clerk, tax collector, and all other necessary non-elected municipal officers. Although the power to hire municipal officers is vested in the mayor and board of aldermen, they may only appoint or hire, as police personnel, those persons who have been recommended by the chief of police. In other words, the mayor and board of aldermen's general power to hire police personnel is subject to the recommendations of the chief of police. However, generally speaking, the power to hire and fire all non-elected municipal officers is vested in the mayor and board of aldermen.
One of your questions asked if the board of aldermen can set the working hours for an elected chief of police. LSA-R.S. 33:381 provides, in part, that:
 A. The officers of every municipality shall be a mayor, aldermen, a chief of police, a tax collector, a clerk, and a street commissioner.
LSA-R.S. 33:381.1 continues by stating in part:
 The marshal who is the chief of police in such municipalities shall be elected at large . . .
It has been the opinion of this office that the chief of police is an elected official on full-time duty, and that as an elected official, he can not be relegated to an inferior position of an employee. Thus, as an elected official and not an employee, the chief of police is not required to keep a time sheet, record and file the number of hours worked at the municipal hall nor can his working hours be set by the board of aldermen.
You also asked if the board of aldermen can reduce an elected chief of police's salary. Article VI, Section 12 of the Louisiana Constitution of 1974 provides:
 Section 12. The compensation or method of fixing the compensation of an elected official of any local governmental subdivision which operates under a home rule charter or plan of government, as provided in Sections 4 and 5 of this Article, shall be provided in its charter. The compensation or method of fixing the compensation of an elected official of any other local governmental subdivision shall be provided by law. Compensation of a local official shall not be reduced during the term for which he is elected. (Emphasis added.)
Thus, applying the above-quoted constitutional article, it is our opinion that the municipal board of aldermen can not reduce the compensation of an elected chief of police during the term for which he is elected.
There was another inquiry concerning the board of aldermen's control over municipal police property. Specifically you asked if the board of aldermen could sell one of the two cars assigned to the police department. LSA-R.S. 33:401 gives the mayor and board of aldermen the power to control all municipal property. It provides, in pertinent part, as follows:
 A. The mayor and board of aldermen of every municipality shall have the care, management, and control of the municipality and its property and finances . . .
Therefore, because of their power to control and manage municipal property, it is our opinion that the mayor and board of aldermen can sell one of the two cars assigned to the police department.
In your final inquiry, you asked if the mayor and board of aldermen can require an elected chief of police to log his mileage. LSA-R.S. 33:404
delineates the duties and powers of a Lawrason Act mayor. It provides, in part, that:
 The mayor shall preside at all meetings of the board of aldermen, and in case there is an equal division, he shall give the deciding vote. He shall have the superintending control of all offices and affairs of the municipality. . . . He may require any officer of the municipality to exhibit his accounts or other papers, and to make report to the board of aldermen, in writing, on any matter pertaining to his office . . .
Applying this statute, it is the opinion of this office that the mayor may require a municipal officer to make written reports to the board of aldermen on any matter pertaining to his office. Such reports would include the reporting of mileage by the chief of police.
Our office has issued numerous opinions dealing with some of the same issues posed in your opinion request. I have enclosed, for your convenience, some of these opinions hoping that they may be of some assistance to you.
It is hoped that we have been of some assistance to you. If we may be of any further assistance, please feel free to contact us.
Sincerely,
 WILLIAM J. GUSTE, JR. ATTORNEY GENERA
 BY: ________________________________ CASSANDRA SIMMS STAFF ATTORNEY
CS:rjl
Enclosures
cc: Chief Jesse Pingno Chief J. C. Ricks